UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| HONG LIANG SHEN, and JIE TAN,<br><br>Plaintiffs,<br><br>v.<br><br>ANTHONY P PATELLA, ROBIN MOORE, KRISTA WROLDSON MILLER, THOMAS BOWLER, and KATHERINE J BIERWAS,<br><br>Defendants. | Civil Action No. 25-30212-MGM |

MEMORANDUM AND ORDER REGARDING DEFENDANTS' MOTIONS TO DISMISS
(Dkt. Nos. 25, 27, 30, 55)

September 29, 2026

MASTROIANNI, U.S.D.J.

## I. INTRODUCTION

Hong Liang Shen, a party to a divorce proceeding in the Berkshire County Probate and Family Court ("Probate Court"), and Jie Tan, his attorney in that proceeding (collectively, "Plaintiffs"), bring this action against Anthony Patella, the Berkshire County Register of Probate; Robin Moore, a real estate agent; and Krista Wroldson Miller and Katherine Bierwas, attorneys representing Shen's former spouse in the underlying divorce proceedings.

Plaintiffs assert various claims in their amended complaint. First, under 42 U.S.C. § 1983 ("Section 1983"), Plaintiffs assert a procedural due process claim based on the alleged unconstitutional delegation of judicial power, among other grounds (Count I); First Amendment retaliation and prior restraint claims (Count II); and an equal protection claim (Count III). Second,

Plaintiffs assert abuse of process claims under Massachusetts tort law and the Massachusetts Civil Rights Act ("MCRA"), Mass. Gen. Laws ch. 12, §11I (Count IV). Third, they seek declaratory relief under 28 U.S.C. §§ 2201-02 (Count V). Finally, Plaintiffs assert fraud claims against Moore, Bierwas, and Miller (Count VI).

Defendants now move to dismiss Plaintiffs' amended complaint under multiple theories, including sovereign immunity, collateral estoppel, domestic relations, and the *Younger*, *Burford*, and *Rooker-Feldman* doctrines. (Dkt. Nos. 25, 30, 55.) Additionally, Bierwas and Miller filed a special motion to dismiss under the Massachusetts anti-SLAPP statute, Mass. Gen. Laws ch. 231 §59H. (Dkt. No 27.) For the reasons set forth below, the court will grant the Defendants' motions to dismiss solely on *Rooker-Feldman* grounds.

## II. BACKGROUND

This case arises from a contentious divorce between Conghui Zheng ("Zheng") and her former husband, Shen. On December 7, 2022, the Probate Court entered a divorce judgment awarding Shen fifty percent of the equity in the marital residence and directing Zheng to pay him $85,309, representing his interest in the property by March 15, 2023. (Am. Compl., Dkt. No. 19 ¶ 24.) If Zheng did not make that payment, the judgment required the residence to be listed for sale, with Shen to receive $85,309 from the net proceeds. (*Id.*) Zheng elected to sell the residence. (*Id.* ¶ 25.) Moore was retained as the listing agent and initially marketed the property for $379,000. (*Id.*) In April 2023, the parties reached a purchase agreement for $352,000. (*Id.*) Plaintiffs subsequently sought relief under Rule 60(b)(4), contending that the $85,309 payment provision was procured through fraud. (*Id.* ¶ 26.) The Probate Court denied the motion, and the Massachusetts Appeals Court affirmed. (*Id.* ¶¶ 26–27.)

The contemplated sale did not close, prompting the parties to file cross-complaints for contempt. (*Id.* ¶¶28–29, 33.) Zheng also moved to remove Shen from the sale process, alleging that

he had refused to execute the necessary closing documents. (*Id.* ¶ 32.) Following a hearing, the Probate Court found neither party in contempt but entered further orders governing the sale. (*Id.* ¶¶ 34, 36.) Among other things, the Probate Court directed the parties to execute a listing agreement with Moore; authorized Moore to determine the property's fair market value if the parties could not agree on a listing price; required the parties to follow Moore's recommendations concerning negotiations and the terms of any purchase and sale agreement; and directed them to execute all documents necessary to complete the sale. (*Id.*) The order further provided that Shen would receive $85,309 from the sale proceeds and that, if either party failed to comply, the court could appoint an individual under Mass. R. Dom. Rel. P. 70 ("Rule 70") to effectuate the sale. (*Id.*)

On October 19, 2023, Zheng filed a second contempt complaint alleging that Shen had refused to sign a purchase and sale agreement. (*Id.* ¶ 41.) Shen executed the listing agreement eleven days later. (*Id.* ¶ 42.) At a November 20, 2023 hearing on the contempt complaint, the Probate Court also addressed a dispute concerning the listing price. (*Id.* ¶¶ 43–44.) After a further hearing on December 18, 2023, at which Moore testified regarding the property's fair market value, the Probate Court adopted her valuation and reduced the listing price from $359,900 to $317,100. (*Id.* ¶¶ 46, 47 48.) The parties thereafter executed an amended listing agreement. (*Id.* ¶ 49.)

On January 2, 2024, Moore submitted a purchase-and-sale agreement. (*Id.* ¶ 50.) Shen added a "Seller's Note" to the agreement, prompting Zheng to file an emergency Rule 70 motion on the ground that the additional language would impede the sale.[1] (*Id.* ¶¶ 51–52.) The Probate Court held

---

[1] The "Seller's Note" provided:

> The sales price was ordered by the Berkshire Probate Court in a second Contempt hearing based on its judgment on seller Hong Liang Shen's Complaint of Contempt; and seller Hong Liang Shen has appealed the court's judgment on his complaint of contempt; whether the judgment on his complaint of Contempt by the Berkshire Probate Court is valid or not may take many months to be determined by the Appeals [C]ourt. The Appeals Docket #2023-P-1468. [P]lease consult with your attorney.

(Dkt. No. 1-12, Ex. 10 ¶ 34.)

an emergency hearing on January 4, 2024 and later that day entered a contempt judgment against Shen based on the Seller's Note. (*Id.* ¶¶ 53–55.) Shen appealed. (*Id.* ¶ 56.) The Appeals Court affirmed the Probate Court's contempt orders and imposed sanctions, awarding Zheng $31,547 in attorney's fees and $1,689 in costs, payable jointly by Shen and Tan. (*Id.* ¶¶ 59, 65.) The Appeals Court denied reconsideration and the Massachusetts Supreme Judicial Court denied further appellate review. (*Id.* ¶¶ 63–64.)

Shen and his attorney thereafter brought four separate actions in this court against Zheng, her attorneys, state court judges, and other officials. (*See* 3:25-cv-30003-MGM; 3:25-cv-30043-MGM; 3:25-cv-30067-MGM; 3:25-cv-11876-MGM.) Although framed as due process and other constitutional violations, those actions arose from the divorce proceedings and the state court's ruling concerning the marital residence. Plaintiffs voluntarily dismissed three of the actions. The fourth was dismissed under the *Younger*, *Burford*, and *Rooker-Feldman* doctrines.[2] Plaintiffs now bring a fifth action arising from the same underlying divorce proceedings. Their claims again challenge matters previously litigated in the Probate Court, reviewed on appeal, or raised in their prior federal actions.

[2] The *Rooker-Feldman* doctrine is shorthand for the Supreme Court's interpretation of 28 U.S.C. § 1257 in *D.C. Ct. of Appeals v. Feldman*, 460 U.S. 462 (1983) and *Rooker v. Fid. Tr. Co.*, 263 U.S. 413 (1923).

"In *Younger v. Harris*, 401 U.S. 37, 91 S. Ct. 746, 27 L. Ed. 2d 669 (1971), the Supreme Court enunciated a doctrine of abstention. Fidelity to that doctrine requires federal courts, in the absence of extraordinary circumstances, to refrain from interfering with certain state proceedings." *Sirva Relocation, LLC v. Richie*, 794 F.3d 185, 189 (1st Cir. 2015).

The term *Burford* abstention refers to the doctrine permitting federal courts, in limited circumstances, to abstain from deciding cases involving difficult questions of state law and substantial state policy interests. *See Burford v. Sun Oil Co.*, 319 U.S. 315 (1943); *Ankenbrandt v. Richards*, 504 U.S. 689, 705–706 (1992) ("[T]he abstention principles developed in *Burford* . . . might be relevant in a case involving elements of the domestic relationship even when the parties do not seek divorce, alimony, or child custody.").

## III. MOTION TO DISMISS STANDARD

Federal courts are courts of limited jurisdiction and may act only where subject matter jurisdiction exists. "The party invoking federal jurisdiction has the burden of establishing that the court has subject matter jurisdiction over the case." *Amoche v. Guarantee Tr. Life Ins. Co.*, 556 F.3d 41, 48 (1st Cir. 2009). Jurisdictional questions raised under Rule 12(b)(1) generally must be resolved before the court reaches arguments directed to the merits under Rule 12(b)(6). *Mulero-Carrillo v. Roman-Hernandez*, 790 F.3d 99, 105 (1st Cir. 2015). "The *Rooker-Feldman* doctrine is jurisdictional in nature; if a case is dismissed because the *Rooker-Feldman* doctrine applies, it means the court has no subject matter jurisdiction to hear the case." *Mills v. Harmon L. Offs., P.C.*, 344 F.3d 42, 44 n. 1 (1st Cir. 2003) (quoting *In re Middlesex Power Equip. & Marine, Inc.*, 292 F.3d 61, 66 (1st Cir. 2002)).[3]

## IV. DISCUSSION

### A. *Rooker-Feldman* Doctrine

Defendants move to dismiss Plaintiffs' claims for lack of subject matter jurisdiction under the *Rooker-Feldman* doctrine. (Dkt. Nos. 25, 30, 55.) They contend that Plaintiffs' claims arise from adverse rulings entered in the underlying state court proceedings and improperly seek federal review of those decisions. The court agrees.

Federal district courts lack appellate jurisdiction over state court judgments; Congress has vested authority to review final judgments of a state court in the Supreme Court of the United States. 28 U.S.C. § 1257; *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 292 (2005). The *Rooker-Feldman* doctrine gives effect to that jurisdictional limitation by precluding a federal district court from entertaining an action brought by a party who lost in state court and who is "seeking

[3] In resolving a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), the court construes the complaint liberally, accepts all well-pleaded facts as true, and draws all reasonable inferences in plaintiff's favor. *Aversa v. United States*, 99 F.3d 1200, 1209–10 (1st Cir. 1996) (citing *Murphy v. United States*, 45 F.3d 520, 522 (1st Cir. 1995)). "In addition, the court may consider whatever evidence has been submitted, such as the depositions and exhibits submitted in this case." *Id.*; *see also Gonzalez v. United States*, 284 F.3d 281, 288 (1st Cir. 2002).

review and rejection of that judgment" in a lower federal court. *Exxon Mobil Corp.*, 544 U.S. at 291. Instead, "the proper forum for challenging an unlawful state court ruling is the United States Supreme Court, on appeal of the highest state court's final judgment." *Davison v. Gov't of Puerto Rico-Puerto Rico Firefighters Corps.*, 471 F.3d 220, 223 (1st Cir. 2006). Litigants cannot "avoid the impact of the *Rooker-Feldman* Doctrine simply by recasting [their] claims in federal court as arising under the United States Constitution" where adjudicating those claims would require the district court to review the state court's decision. *Sinapi v. Rhode Island Bd. of Bar Examiners*, 910 F.3d 544, 549 (1st Cir. 2018) (citing *McKenna v. Curtin*, 869 F.3d 44, 48 (1st Cir. 2017)). The doctrine occupies a narrow field as it "applies only when 'the losing party in state court filed suit in federal court after the state proceedings ended, complaining of an injury caused by the state-court judgment and seeking review and rejection of that judgment.'" *In re Am. Bridge Prods., Inc.*, 599 F.3d 1, 4 (1st Cir. 2010) (quoting *Exxon Mobil Corp.*, 544 U.S. at 291)).

Here, the requirements of the *Rooker-Feldman* doctrine are satisfied. Shen is a state court losing party within the meaning of the doctrine. His appeals challenging the Probate Court's rulings concerning the divorce judgement and subsequent contempt proceedings were unsuccessful. The Massachusetts Appeals Court affirmed the relevant Probate Court orders, denied reconsideration, and, in connection with the later appeals, imposed sanctions against Shen and Tan. The Supreme Judicial Court thereafter denied further appellate review. *See Efreom v. McKee*, 46 F.4th 9, 17 (1st Cir. 2022) ("[*Rooker-Feldman*] prevents losing litigants from seeking what in substance would be appellate review of the state judgment in a United States district court, based on the losing party's claim that the state judgment itself violates the loser's federal rights." (internal quotation marks and citation omitted)). The relevant state court proceedings also ended before Plaintiffs commenced this action on December 17, 2025. (*See* Dkt. Nos. 1-16 – 42.) Plaintiffs' amended complaint challenges state court rulings that had already become final for purposes of the *Rooker-Feldman* inquiry.

Count I alleges that Defendants, acting in concert with the Probate Court, deprived Shen of property rights through the contempt proceeding. (Am. Compl., Dkt. No. 19 ¶¶ 70-108.) Count II challenges the Appeals Court's imposition of sanctions as punishment for Plaintiffs' exercise of protected speech. (*Id.* ¶¶ 109-18.) Count III similarly alleges that the Appeals Court's treatment of Tan violated equal protection. (*Id.* ¶¶ 119-26.) Count IV characterizes the Probate Court's invocation of Rule 70 and treatment of evidence as part of a coordinated "case-fixing" efforts. (*Id.* ¶¶ 127-48.) Count V challenges writs of execution issued to enforce the amounts awarded by the Appeals Court. (*Id.* ¶¶ 149-51.) Count VI alleges that Moore, Bierwas, and Miller engaged in fraudulent conduct during the contempt proceedings that deprived Plaintiffs of due process and protected speech. (*Id.* ¶¶ 152-62.) Plaintiffs do not expressly attribute the alleged injuries related to Count VI to the state court's decisions but rather to Defendants' alleged fraud, conspiracy, and other misconduct. This reframing of the source of the alleged injuries does not change their substance. Each theory alleged in the complaint ultimately rests on allegations of an improperly procured state court ruling and resulting injuries to Plaintiffs. *See Bauersachs v. Gaziano*, No. 21-CV-11866-ADB, 2022 WL 4111911, at *4 (D. Mass. Sept. 8, 2022), *aff'd*, No. 22-1772, 2023 WL 7001673 (1st Cir. May 15, 2023) (concluding that *Rooker-Feldman* barred claims where the complaint extensively discussed state court proceedings and attributed the alleged injuries to state court decisions).

Plaintiffs' assertion of newly discovered fraud evidence and a "weaponize[d] . . . state judicial system" cannot circumvent the doctrine by alleging "in general, conclusory terms that the [defendants] conspired to cause the state court to reach a wrong result." *Callaghan v. Shirazi*, 215 F.3d 1312 (1st Cir. 2000).[4] "Where federal relief can only be predicated upon a conviction that the state

[4] For *Rooker-Feldman* purposes, this court has already rejected Tan's argument that the doctrine does not apply because she was not a party to the state-court proceedings. (*See* Dkt. No. 16.) The court explained that Tan was "directly involved in the state court action she seeks to challenge" and that the sanctions imposed against

court was wrong, it is difficult to conceive the federal proceeding as, in substance, anything other than a prohibited appeal of the state-court judgment." *Tyler v. Supreme Jud. Ct. of Massachusetts*, 914 F.3d 47, 50 (1st Cir. 2019) (quoting *Hill v. Town of Conway*, 193 F.3d 33, 39 (1st Cir. 1999)); *Klimowicz v. Deutsche Bank Nat'l Tr. Co.*, 907 F.3d 61, 66 (1st Cir. 2018) ("[T]he critical datum is whether the plaintiff's federal suit is, in effect, an end-run around a final state-court judgment."). The same is true of Plaintiffs' contentions that the state court orders are void because they were entered in violation of their federal constitutional rights. (*See* Dkt. Nos. 40, 57.) Such arguments do not create federal jurisdiction to review those order. *See Belanger v. Kazarosian*, No. 17-CV-10087-ADB, 2017 WL 1186339, at *5 (D. Mass. Mar. 29, 2017) ("Here, Plaintiffs argue that this Court has jurisdiction over their challenges to the Probate Court Orders as they were obtained in violation of the Fifth and Fourteenth Amendments to the United States Constitution. This is the precise type of challenge prohibited by the *Rooker-Feldman* doctrine." (citation omitted)).[5]

Because Plaintiffs seek relief from injuries caused by the final judgments and orders entered in the underlying divorce and contempt proceedings, this court lacks subject matter jurisdiction over this action under the *Rooker-Feldman* doctrine.[6]

---

her could be "contested through the state court appellate process, but may not be challenged in the United States District Court." (*Id.*)

[5] This court has already reached a similar conclusion in one of Shen's actions arising from the same divorce proceedings citing multiple abstention doctrines. (*See* 3:25-cv-30067-MGM, Dkt. No. 15 at 3-4.) Having concluded that dismissal is warranted under *Rooker-Feldman*, the court need not separately address each doctrine or the domestic relations exception.

[6] Because the court lacks subject matter jurisdiction over Plaintiffs' claims under the *Rooker-Feldman* doctrine, it need not reach Defendants' alternative grounds for dismissal under Rule 12(b)(6). *See Pereira v. DeJoy*, No. CV 23-12133-RGS, 2024 WL 1676850, at *1 (D. Mass. Apr. 18, 2024) ("Where, as here, the court is tasked with deciding motions to dismiss under both Rules 12(b)(1) and 12(b)(6), it must resolve the jurisdictional dispute before reaching the merits because 'if the court lacks subject matter jurisdiction, assessment of the merits becomes a matter of purely academic interest.'" (quoting *Deniz v. Municipality of Guaynabo*, 285 F.3d 142, 149–50 (1st Cir. 2002))). Similarly, the court need not reach the merits of Bierwas and Miller's special motion under the Massachusetts anti-SLAPP statute. Having concluded that it lacks subject matter jurisdiction over this action, Bierwas and Miller's special motion to dismiss under the Massachusetts' anti-SLAPP statute is denied as moot.

Lastly, Bierwas and Miller urge the court to declare Plaintiffs "vexatious litigants" and bar them from initiating any further action in this or any other court without prior leave of this court. (Dkt. No. 26 at 12-13). The court declines to impose such restrictions at this time, particularly in light of the dismissal of this action.

## V. CONCLUSION

For the reasons discussed above, Defendants' motions to dismiss (Dkt. Nos. 25, 30, 55) are GRANTED for lack of subject matter jurisdiction under the *Rooker-Feldman* doctrine and Defendants Bierwas and Miller's special motion to dismiss (Dkt. No. 27) is DENIED as MOOT.

It is so Ordered.

/s/ Mark G. Mastroianni
MARK G. MASTROIANNI
United States District Judge